## ALITAK PACKING CO v. ALASKA PACKERS' ASS'N.

(Third Division. Seward. September 27, 1920.)

### No. 1048.

**1. Fish ⊙⇒10(2)—Injunction—Water and Water Courses.**

During the fishing season of 1919, the plaintiff constructed and maintained a fish trap No. 2, on the easterly shore of Moser Bay, an arm of Alitak Bay, and renewed its preference right for the season of 1920. Both plaintiff and defendant contemplated the erection of a new trap on the same shore, at the legal distance southeast of trap No. 2, in the season of 1920, and both secured license and purchased material for the erection thereof. Prior to May 16, 1920, defendant posted a notice on the shore opposite the proposed site, claiming the right to locate its trap there, and anchored a buoy off shore as an additional notice. On May 16 the plaintiff drove its piles and proceeded at once to build its trap, at a point about 900 feet southeast of defendant's proposed site. On June 12, 1920, defendant towed its floating trap to the site so claimed by it, and thus within the prohibited distance both traps fished. Plaintiff brought this action for an injunction to restrain the defendant from using its trap. *Held*, the action of the defendant in erecting its trap was not willful, wanton, or unprovoked, but was made in honest, though it may be mistaken, belief that it had the better right by reason of its having secured a federal permit and territorial license, and was actually constructing its floating trap, and had marked the site by a buoy and other notice; injunction denied.

**2. Fish ⊙⇒10(2)—Fish Trap Site—Public Lands.**

One cannot keep another from taking possession of an unoccupied site for a fish trap by putting up a notice on the shore or anchoring a buoy opposite such site. The first person acquiring actual, peaceable, physical possession of such a location is first in point of law.

**3. Public Lands ⊙⇒31—Location by Possession.**

The first one acquiring actual, peaceable, physical possession of a location on unoccupied public land of the United States, not reserved from such location, placing substantial improvements thereon, and continuing the same to completion with reasonable diligence, and maintaining the same for a lawful purpose acquires the better right.

**4. Injunction ⊙⇒5, 13—Mandatory Injunctions—Damages.**

Mandatory injunctions are granted only in cases of necessity. Where the injury is trivial equity will not ordinarily interfere by injunction, or as in cases where the right has been established by law; but in order to justify such interposition,

the injury complained of must be substantial, and not merely technical or inconsequential.

In 1919 plaintiff maintained a fish trap, known as trap No. 2, on the easterly shore of Moser Bay, an arm of Alitak Bay. It appears from the evidence that both plaintiff and defendant contemplated erecting a trap to the southeast of said trap No. 2 and each applied for a federal permit and for a territorial license to maintain a trap in said waters, and each purchased webbing, piling, and other materials for constructing such trap, to be erected early in the spring of 1920. The defendant brought up material and commenced the construction of a floating trap at some distance from said Moser Bay, and prior to May 16, 1920, put a notice of location on the shore, and anchored a gasoline oil tank for a buoy, some 400 or 500 feet from shore, and on June 12th towed the said floating trap to a location about 1,850 feet southerly from plaintiff's said trap No. 2; and securely anchored the same with four anchors, weighing 3,000 or 4,000 pounds each; the lead being about 1,500 feet in length between the shore and said floating trap.

On May 16, 1920, plaintiff began driving piling at a point about 900 feet southerly from said floating trap No. 7, and about 2,750 feet from said trap No. 2, and continued driving the piling until it completed its said fish trap on June 8th and designated same as No. 3.

The evidence showed that defendant's agents notified plaintiff's agents, when they began driving piling on May 16th, that the defendant had put its notice on the shore and anchored said buoy and was constructing its trap, to be placed at the point where it was afterwards located, and that plaintiff was encroaching on its trap site.

E. E. Ritchie, of Valdez, and L. V. Ray, of Seward, for plaintiff.

Donohoe & Dimond, of Valdez, for defendant.

BROWN, District Judge. The first one acquiring actual peaceable physical possession of a location on unoccupied public land of the United States, not reserved from such location, placing substantial improvements thereon, continuing the same to completion with reasonable diligence, and maintaining same

for a lawful purpose, acquires the better right. All acts of giving notice or preparation, through thought, words, or acts, become immaterial, so it is not necessary to consider the matter of applying for or securing permits, licenses, or materials. One cannot keep another from taking possession of an unoccupied site for a fish trap by putting up a notice or anchoring a buoy any more than he could acquire the exclusive right to a location on land to shoot a bear, or deer, or any other animals, by putting up a notice that he intended to occupy said site for such a purpose. It must therefore be found that the plaintiff acquired the first and better right to the location of its said trap No. 3.

Section 262, Compiled Laws of Alaska, provides that no fish trap shall be located within 300 feet endwise or 1,800 feet lengthwise of any other trap. Defendants were required to measure and locate their said trap No. 7 1,800 feet away from plaintiff's trap No. 2 and it is evident that Capt. Stindt, the employee of defendant in charge of the work, located said trap No. 7 within about 900 feet of plaintiff's trap No. 3, under an honest belief that he had the prior and better right by reason of his notice and buoy marking the site, as he could not drive piling for this trap at said point on account of the rock bottom, and therefore had to construct a floating trap to be anchored at this point. This honest, though mistaken, belief would not as a matter of law entitle the defendant to a superior right to said location, if the plaintiff first, in point of time, acquired the actual physical possession of the location covered by said trap No. 3; but it is to be considered in this case, owing to the manner in which the fish run into and through the waters of said Moser Bay, and as affecting plaintiff's right to an injunction. The salmon come into said Moser Bay from Alitak Bay and run northerly, reaching first the said plaintiff's trap No. 3, then defendant's trap No. 7 and then plaintiff's trap No. 2. The testimony goes to show that the salmon continue on the same course until they reach some fresh-water stream, toward the head of which they continue to strive. The plaintiff introduced some testimony tending to show that the fish work or drift backward on account of tides or other causes, from their continuous travel toward the fresh-water stream toward which they are heading.

The defendant's witnesses deny this, and testify that, while

. the salmon play some in the currents and eddies, their trend is almost continuously in the direction in which they are running. To confirm this latter belief, the traps erected in that vicinity fish only one way, on the southerly side of the trap, so that the fish, progressing in a northerly direction only, are caught; but, if any should turn and go to the southward again they could not go into the trap, unless they go clear around it, and then come up from the southerly side. If any number of fish returned southward, it would be reasonable to suppose that the trap would also be open into the heart on the northerly side, as the testimony shows this to be quite practicable. The significance of this is in the effort of the plaintiff to prove that its chances of catching fish in trap No. 3 were injured by defendant's location and maintenance of its trap No. 7. Plaintiff has not furnished any such satisfactory evidence of its contention as to establish this by any preponderance of the evidence, and I am forced to the conclusion that the defendant's trap No. 7 does not in the least injure the plaintiff in its right to operate and maintain its trap No. 3.

The testimony shows that the plaintiff in the season of 1920 caught in its trap No. 2 about 175,000 fish, in its trap No. 3 about 125,000, and the defendant caught in its trap No. 7 about 117,000.

A preliminary hearing was had in this case last July, when the plaintiff sought to enjoin the defendant from operating its said trap No. 7, and the preliminary injunction was denied on the ground that no injury was shown to have been caused plaintiff by defendant's operation of its trap No. 7. At that time there was no claim made by any of plaintiff's witnesses that defendant's trap No. 7 interfered with the fish going into its trap No. 3, but in the hearing of the cause at this time the plaintiff attempts to show by one or two witnesses that some fish do go back from the general course northward, and were prevented from reaching its trap No. 3 by the obstruction caused by defendant's trap No. 7. One of plaintiff's witnesses, however, who was probably in as good condition to know the habits and run of the fish as any one else, testified that he did not think said defendant's trap No. 7 in any wise interfered with plaintiff's trap No. 3. Defendant's witnesses were also positive that no such interference was caused, and I feel compelled to agree with that contention,

and to find that no injury is shown to have been caused to plaintiff by defendant's operation of its trap No. 7.

Plaintiff earnestly contends that any injury, however slight, would be sufficient to justify the issuance of an injunction, and cites 14 R. C. L. § 81, where it is said:

"According to. some authorities, the rule stated is that, where the wrong complained of is willful, wanton, or unprovoked, the injunction should be granted, although the loss to the defendant will be greater than the injury to the plaintiff from its refusal, because in such a case the wrongdoer is not entitled to the benefit of any consideration in a court of equity. Where it appears that certain substantial and irreparable damages will result to a complainant by the injury complained of, an injunction will not be refused because by the granting of it greater damage and disadvantage will result to the defendant."

In this case, however, I do not believe that the act of the defendant was willful, wanton, or unprovoked, but was made in the honest, though it may be in the mistaken, belief that it had the better right by reason of its having secured a federal permit and territorial license, and was actually constructing its floating trap, and had marked the site by a buoy and other notice. This, taken in connection with the fact that no injury is shown to have resulted to plaintiff, would seem to require the exercise of a proper discretion in denying said injunction.

"Mandatory injunctions are granted only in cases of necessity." 14 R. C. L. par. 15, p. 317.

Also:

"Where an injury is trivial, equity will not ordinarily interfere by injunction, or as in cases where the right has been established by law; but in order to justify such interposition the injury complained of must be substantial, and not merely technical or inconsequential." 14 R. C. L. par. 57, page 334, and cases there cited.

It may be claimed that the reason for prohibiting a fish trap to be placed within 1,800 feet lengthwise of another fish trap is a matter of public policy, to prevent the depletion of fish, and not as a protection alone to the private interests of the owners of fish traps and it may be that the defendant is guilty of a technical violation of this law. However, this seems to be an exceptional case. The complaint in such case usually is against a trap occupying a position within 1,800 feet of another trap on the fishing side; that is, on the side from

which the fish run or approach, and no one ordinarily would place his trap within 1,800 feet of another trap on the non-fishing side, as the result would be to "work" his own trap.

There might be conceivably be cases where this 1,800-feet rule would be difficult to apply, as, for instance, where two traps were set, one on each side of a narrow peninsula.

In view of the peculiar conditions existing in this case, viz. what I believe to be the good faith of the defendant in claiming the right to locate its trap where it did, and the fact that no injury has been shown to result to the plaintiff, I am of the opinion that the plaintiff in equity is not entitled to an injunction.

The injunction will therefore be denied.